May it please the Court, Dan Kowalski for the Petitioner on ALANZA, seated at Council Table. Thank you for this opportunity to meet with you today. There have been recent developments in this area of the law, first coming from the First Circuit. So before I get to the constitutional issue, I did want to point out that a few weeks ago, the First Circuit in HAUD, H-A-O-U-D v. Ashcroft, 350, Fed Third 201, addressed an identical situation. In that case, as in our case, the immigration judge did four things. First, pre-termitted the asylum claim for untimeliness and the failure to meet an extension. Did you give us a 28-J letter on that case? I did not, Your Honor. Did you? Before you leave, if you could write out a sheet for the First Circuit, that would be very helpful. Thank you. And you have ten minutes each side in this case, I should assume. Thank you. First, the immigration judge in both cases, the HAUD case and our case, pre-termitted the asylum claim for untimeliness and failure to meet an exception to the untimeliness rule, the one-year rule. Second, the immigration judge went ahead and had a full asylum claim and denied it on the merits. Now, recall that those two are incompatible. They can't exist in the same universe. But the judge did both to protect, to make a full record. Third, the immigration judge denied withholding, and fourth, denied CAAT. When it went up to the board on appeal, the board issued what we in the business called an AWO, an A-W-O, Affirmative Without Opinion. An AWO is functionally a stamp that says yes. But as the First Circuit pointed out, yes to what? Yes to 1, 3, and 4? Or yes to 2, 3, and 4? Because it can't be yes to 1, 2, 3, and 4, because 1 and 2 are incompatible. And, more importantly, 1 cannot be reviewed under the statute, which we'll discuss in a minute. 2 can be reviewed by this Court under the statute. In other words, a denial of asylum on the merits can be reviewed, but a denial based on pretermission, based on a failure to meet the 1-year rule, cannot be reviewed. So the First Circuit said, quote, the AWO in this case gives us no guidance as to whether the board's the board affirmed the IJ's decision on a nonreviewable basis, i.e., untimeliness, or reviewable basis, i.e., the merits of Hawood's asylum claim.  Yes, Your Honor. We have a recent case called the Falcon-Carucci v. Ashes, where we addressed streamlining. Streamlining. And in there, you know, the panel didn't go off on any constitutional arguments, but interpreted the, you know, the scheme and how it works under the regulations. And one of the things that we said was, if the BIA streamlines a case, as here, the IJ's decision becomes the final agency decision, and the regulatory scheme gives us a green light to scrutinize the IJ's decision as we would a decision of the BIA itself. So in the Ninth Circuit, when there's a streamlining case, we just treat the IJ's decision as the decision of the board. Now, you know, it's frequent. Isn't it? It's not unusual for either an agency or for a court to offer alternative basis for their, for the court's ruling. That's correct. But what the government is saying in this case and what they argued in the Hawood case, and they're arguing all across the country, is that if the judge's decision is not reviewed, then the court, the circuit may not review that, and that wipes out all review, essentially. The court can look at withholding and cat, but it cuts out a review of the asylum case. And so what the First Circuit did in Hawood is said, because we can't tell what the board was affirming, we will remand so that the board can tell us, is it affirming the preacher mission or the denial of asylum on the merits? Well, but we're just saying that under Carucci, Caracci, that the ALJ's decision is essentially the decision of the board. Yes, and... So if you look at it that way, isn't there a decision on timeliness, where they didn't go on and say, well, you know, alternatively, even if you get to the merits here, there's no merits, there's nothing here to the merits. But those, those are... Why is that inconsistent? The problem, it relates to the statute, which precludes this Court from reviewing the timeliness or the failure to... So in other words, if the board, so if an ALJ is going to throw out a case on timeliness grounds, they should only do it on timeliness grounds. That's right. They shouldn't say anything at all about the merits. That's right. And that... Wait a second. Could I, because you're saying yes to that, but I, I don't know if you're advising my colleague correctly. I mean, can't an ALJ go to an alternate ground? The issue of the statute is whether we can review. That's right. But the ALJ can make an alternative holding and say, there's no, it's not timely. Alternatively, if it is timely, there's no grounds for asylum. And the BIA can address timeliness. If they wanted to write an opinion, they could say, here's what we think about timeliness. We've decided it's timely on the alternative ground. We've reached the merits. Right? Isn't it just a question of what we can do? Exactly. Let me let you get back to Judge Paez. It relates to my structural problem, my constitutional problem, because the, the preclude the partial preclusion review creates a situation in which, in effect, the statute Congress is saying only blue-eyed asylum applicants may apply. But if the immigration judge is colorblind and makes a factual error as to eye color and the ability to even apply for asylum, the statute says, you may not review that. So there may be situations where malicious IJs, as I outlined in my brief, will maliciously and, and wrongly say, I pretermit for lack of timeliness. There's nothing you can do about that. Or the court more, more likely immigration judges may mistakenly pretermit. Because, and this is important to note, in, in most other areas of law where there's a lack of judicial review, it's because there's, quote, no law to apply. Here there's much law to apply. The statute, 208a2, is long and detailed. The regulation is even longer and more detailed. There's lots of law to apply. But I agree with you, except that why is it necessary for us to have a specific ruling from the BIA? And that, that's the problem I'm having, when, in fact, we can review the ALJ's decision. And if that's the case, what difference does it make that we don't have jurisdiction on the timeliness? I'll, I'll be frank. I mean, I, I don't, I guess I'm having a little trouble understanding why, even though they, clearly the BIA was, was unspecific. And that's what you're saying. That's the problem, that they have to be specific. Well, we have the alternative of reviewing what the ALJ did, right? So, so what precludes us from doing that? What I'm hearing is, makes me pleased. If, if the court is willing to, under what the IJ did on Part 2, that is, his asylum claim, I'm happy with that. Well, you wouldn't. I mean, I, I don't know if you could do that on the asylum claim. I mean, the IJ, the IJ decided that it was untimely, period. But then he went ahead and had it. He gave an alternative ruling. Right. Right. After a full-blown asylum hearing, in case he was wrong, in case the board said he was wrong. But we don't know what the board said. They just said yes to everything. Well, well, then, but under Karachi, we, we, we, we take the ALJ's, in that circumstance, we take the ALJ's decision as essentially the decision of the board. That's what we're reviewing. Which is part of the judge's decision. That's my, that's my. The problem is, yes, we would, what we're doing, as we're saying, we are not reviewing it on the basis of timeliness. So we know we cannot do that if that is what the BIA remedy meant by what they did. The only thing we can do is to review what the ALJ did in the hearing. And that we can do. So we just set it aside. And we said, yes, it's unclear. We're only going to review that which we are entitled to. And if, if the panel is willing to do that and. . . Well, the other remedy, the other thing we could do is do what the First Circuit  Exactly. Which is you send it back and say, tell us what basis you. . . Exactly. Which you determine, and then they come back and say, well, yeah, we did it on timeliness grounds, then you're out. Then I'm out. Right? Exactly. So that's a risk. But why, but why is that necessary? Why, why do you believe that the First Circuit is correct on that issue when we have alternative jurisdiction no matter what? Well. And if, and if there hadn't been a full hearing, I would agree with you. But let's assume that the ALJ made a decision based on timeliness. Obviously, we're not going to take it. But if the ALJ made its decision on a review of the record, we can take it. And because it's ambiguous enough at the BIA stage, we can then review the entire record. Correct? I agree. And if the panel is willing to review what the IJ did in Step 2 in denying her asylum claim on the merits, I'm perfectly happy with that. Okay. And my time is up. Thank you very much. Thank you for your argument. Good morning, Your Honors. My name is Linda Wernery, and I represent, respond to John Ashcroft. And we ask this Court to affirm the decision of the immigration judge in this case. Maybe you could get a message to respondent. An affirmance without opinion creates a big, big problem in theory as to how we deal with a case where one ground that the ALJ decided on is unreviewable, and the other ground is reviewable. And I've read your regulations. Is there anything that tells me that when a board member affirms without opinion that that means they agree with all the conclusions of the ALJ? There's a reg that says we don't necessarily, doesn't mean we agree with all the reasoning. We agree with the result. But the reg doesn't tell me if the word, quote, result, close quotes, means every holding that the ALJ made is adopted. Okay? If it means that, then we can't review asylum because the BIA has agreed with the holding that it was untimely. And we never get to the alternative holding. That's correct. But if the regulation means the result is like whether the petitioner gets relief or not, and the BIA might have thought, well, it's timely, but she's not entitled to asylum, or he's not entitled to asylum, then really we should be reviewing it. Now, the First Circuit remanded to clarify that. But this is just a bad procedure. So tell me what your regulation means and what the government can do about this. Well, Your Honor, the regulation, as Your Honor has pointed out, does not indicate clearly that when the – when a board member affirms without opinion that he or she agrees with every holding that the ALJ made. It does not mean every holding. Correct. So result doesn't mean – we agree with the result doesn't mean we agree with each of the holdings the ALJ made. That's correct, Your Honor. Well, then we don't know if the board agreed that it was untimely, correct? That's correct, Your Honor. Well, then don't we have to – don't we have to either assume jurisdiction, which I don't know if we can do, and reach the asylum on the merits, or remand it like the First Circuit did? No, Your Honor, because the problem with this analysis and the analysis of the First Circuit is trying to get to the secret reasoning of the board is what the First Circuit seemed to want to do and decided it could not do that. As this Court has held in Falcone-Carriche, it's really irrelevant what the secret reasoning of the board was, because when the board affirms without opinion, the board is standing by the immigration judge's decision as the final agency action. The regulation says – it says it's the final decision for our jurisdictional purposes, but it expressly says you don't adopt everything in it.  That's correct, Your Honor. So the board's decision doesn't mean that the board agrees that the petition was untimely. Now, we can handle it the way along the lines maybe suggested by Judge Pius's inquiry. If we think Falcone-Carriche means, well, we just review the ALJ's decision as if it was the board's decision. That's correct. The government scoots away on that. But to me, that doesn't – I'll just tell you as one judge on the panel, it does not make sense. And I would be inclined to distinguish Falcone-Carriche, because I don't think they were addressing this issue. So, you know, the issue could be clarified easily if the – if the INS would clarify its reg, and when there's a jurisdictional and a non-jurisdictional issue, have a specified way to deal with it. Is there any precedent that says result means what you've told me it means? That result means whether the person gets relief or not, as opposed to result means we agree with all the holdings? We may not agree with each step of the reasoning, but we agree with all the holdings. I'm not aware of any, Your Honor. Sure. On that issue, you've given me your position, but there's really no authority. Right? That's correct. So if we wanted to hold that result under the reg must logically mean they agree with every holding, could we do that? You're telling me that isn't what they mean, though. So is Your Honor's question whether or not agreeing with result means agreeing with both findings vis-a-vis asylum? Right. As opposed to steps in the reasoning. I don't think there would be anything to stop this Court from interpreting that way. From what you're saying, it sounds to me like that isn't really what they're doing. That's not my understanding. You're an officer of the court. That's correct. So, you know, what's going on here? Government will submit that this Court has raised a question of, when there are alternative holdings, one which would deprive the court of jurisdiction and one which would not, that possibly that's not the best type of case to issue an affirmance without opinion. But the government still maintains that the First Circuit is incorrect in Howard because there is no need for this Court to get to, at bottom, what the board was thinking and whether the board actually did agree with both decisions. We always are trying to look for what the agency's decision is. Correct. So tell me what the agency decision is here. The agency decision in this case is the immigration judge's decision that the alien does not qualify for asylum, both because her application was untimely and there was no excuse for that, and also because an alternative basis on the merits of her asylum application, also that withholding of removal, she did not meet that standard nor the Convention Against Torture Protection. But on the asylum, you're telling Judge Payaz that the agency's decision means both that it was untimely and there wasn't substantial excuse. That's correct, Your Honor, because the immigration judge's decision is the decision that's reviewed in front of this Court, and I believe this Court even sort of told the government in Falcón-Carriche, you know, beware, sometimes you're going to have to live with some bad stuff in an I.J. decision, and the government in these cases is willing to do that. But it's clear that this Court's position has been, you take what's ever in the immigration judge's decision, and that's what we have in the decision. We're reviewing, you know, I haven't really studied Falcón-Carriche carefully. I just happened to note that language when I was reading it. Are we reviewing the BIA's decision? No, Your Honor. Are we reviewing the decision of the agency? You're reviewing the decision of the agency, Your Honor, and the regulations provide that in a case where there's an affirmance without opinion, the decision of the immigration judge is the final agency decision. So in other words, the BIA, an appeal to the BIA is necessary, but if the BIA affirms without decision, then that means it's not necessary. In other words, we then review the ALJ's decision. Is that what you're saying? Yes. Correct, Your Honor. It's necessary to go to the board for purposes of exhaustion. But when the board decides to affirm without opinion, then the board kind of is out of it for purposes of judicial review, because the board is saying we will stand by the IJ's decision. And just as this government – I think just as this Court would not listen to a government argument of where there's explicit errors in the immigration judge's decision that that doesn't matter because the board obviously didn't go down that line, I mean, I think the Court would not hear those type of arguments from us. Is it your position, let's say, at least, let's say historically, that if the BIA decided that there was no jurisdiction and that was the sole reason that they would set forth that as opposed to saying that they are affirming the ALJ? That has been my experience, Your Honor. I don't believe I can represent that the regs require the board to issue a separate decision in that type of situation. But my experience has been when the board does not agree with a specific holding, it will issue a different decision saying we don't agree with that. However, we affirm on other grounds. It obviously has the option to do that. But again, I'm not going to say that the regs require that it do that. Well, and I guess I'm looking for the hypothetical where the board decides that it isn't timely, but decides that alternatively that on the basis of what is presented to it, that the ALJ was correct factually. Under those circumstances, would the board by necessity need to set forth precisely what its ruling is? As opposed to issuing an affirmance without opinion? I don't think the regs require that the board do that, because the regs allow the board to affirm without opinion when it agrees with the result. But my experience has been that it often does issue different not-affirmance-without-opinion type decisions when it wants to distance itself from one of the holdings of the ALJ. I guess what I'm really asking is logically, would there ever be a situation where the board could affirm without decision and only be affirming on one as opposed to two, like in this case? They're affirming because it was untimely, and they're affirming because the underlying decision by the ALJ was correct. I don't think we'll ever know, Your Honor, because when they affirm without decision, that's all we know that they do. Then if you don't have a regulation or procedure that tells the board that they shouldn't affirm without opinion when there's both a jurisdictional and a non-jurisdictional issue, then it leaves the risk that the Petitioner has never gotten a review by us of the issue that was the decision of the board. But again, Your Honor, it's really not the decision of the board that matters in a situation where there's an affirmance without opinion. What matters is the immigration judge's decision. If the agency decision is then the IJ's decision, then the board giving an affirmance without opinion just says, that's it, that's the agency decision, you guys review  That's part of it. What it creates is the problem that if the board, with its special expertise, has looked at it and has concluded it's not untimely because of extraordinary circumstances, but they've gone ahead and affirmed without opinion because of the It's not getting a proper review. Well, let me ask you this, though. Can they, just following up on that question, can they, can the BIA make the decision that they're accepting the ALJ's decision? And they can do it by, as we've talked about, the secret or hidden way. In other words, it doesn't make any difference what occurred before the ALJ. They have no, they don't disfavor it and they do not, or have not come to conclude that it's inaccurate. Yes. It's your opinion, then, that if they had done that, if they had found it timely and also found that the ALJ's opinion was correct, then their decision that there's no opinion or they uphold the ALJ's opinion is of necessity always going to potentially include the jurisdictional issue. Yes, Your Honor. In this Court. I mean, the board obviously has jurisdiction over both holdings. Is Your Honor's question whether or not, if the board thought it was timely, it would have said so? Is that the question? It would have been nice if you had a regulation or a procedure. Unfortunately, that has to be our answer, is that the regs do not require the board to do that. The question is whether we have to write something to try to encourage the Attorney General to do something rational. I have one last question for you. Sure. Does the First Circuit have an opinion, like, similar to our Carici opinion? The Albathony opinion is their original streamlining opinion, but is not exactly does not exactly coincide with Falco and Carici, because Could you leave a little note with the Court on that case? Sure. And the difference between the First Circuit and the Ninth Circuit's approach has been the First Circuit has said from the very beginning when it reviewed the streamlining procedure that it reserved the right to address whether or not an individual case should be streamlined. And the Court in Falco and Carici has not said that. That's correct. It's pretty much said it really doesn't matter, because we're going to look at the immigration judge's decision and, Government, you are going to live or die on that decision. And the Government is happy to accept that. And that's going to benefit the Petitioner. That's this Court's opinion, sure. I know I'm out of time, but because counsel surprised us with Howood, may I just address one thing about that case, is that case is not just like this case. If you look at Howood in the First Circuit, the alien raised a new issue on appeal to the Board, citing a new, what the Court thought was a precedential decision. And I believe the reason the Court was so troubled by not knowing which holding the Board addressed is because if the Board upheld the timeliness, then it couldn't satisfy itself that the Board addressed this new issue that was raised on appeal to the Board. And we don't have that situation here, Your Honor. If we could get a 28-J letter on that case, and if you want to give us a letter with a paragraph, that's fine. Thank you so much, Your Honor. Thanks very much. Okay. The case will be submitted. We appreciate the good arguments of counsel. We're going to take a recess for 10 minutes. All rise. This court stands to recess for 10 minutes. The case is submitted.
judges: Gould, Paez, Silver